**SO ORDERED.**

**SIGNED this 18 day of May, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

WALTER ERNEST CLARK,                         CASE NO. 11-07943-8-JRL

    DEBTOR.                                                   CHAPTER 13

### ORDER

This matter came before the court on the debtor's objection to proof of claim. A hearing was held on April 4, 2012, in Raleigh, North Carolina.

### BACKGROUND

Prior to the present case, the debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on December 7, 2001 ("prior case"). The Internal Revenue Service ("IRS") filed a timely proof of claim in the prior case, alleging that the debtor owed income taxes for the 2000 calendar year. On October 29, 2002, the IRS amended its proof of claim, reducing the amount of the priority tax claim for the 2000 income taxes allegedly owed. On September 24, 2005, at the completion of the debtor's chapter 13 plan in the prior case, the debtor was granted a discharge, pursuant to 11 U.S.C. § 1328(a).

The debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code

on March 15, 2012, commencing the case presently before the court. On November 10, 2011, the IRS filed a proof of claim, asserting secured claims of $40,455.00, unsecured priority claims of $29,258.23, and general unsecured claims of $114,467.63.  As the basis for perfection of its secured claims, the IRS attached a notice of federal tax lien ("NOFTL"), evidencing that a federal tax lien against the debtor was validly recorded on November 2, 2010.  The NOFTL is based on the debtor's failure to pay various taxes from 2001 to 2006.  Relevant here, $20,770.78 related to unpaid employment taxes in the fourth quarter of 2001 and the first quarter of 2002 are subject to the NOFTL.

On December 12, 2011, the IRS filed an amended proof of claim, reducing its secured claims to $5,166.46 and general unsecured claims to $44.76.  However, the amended proof of claim continued to assert unsecured priority claims in the amount of $29,258.23.  The majority of this total amount—$28,309.63—is based on civil penalties and interest relating to unpaid employment taxes in the fourth quarter of 2001 and the first quarter of 2002.[1]  The NOFTL was attached to the amended claim in exactly the same form and manner as it was to the original claim.  On December 15, 2011, the debtor filed an objection to the amended claim of the IRS. The IRS filed a response in support of its proof of claim on February 22, 2012.

The debtor's main argument is that at least some of the IRS's claim related to the unpaid employment taxes in the fourth quarter of 2001 arose before the filing of the debtor's prior case on December 7, 2001, and therefore, because this portion was not included in the IRS's proof of claim in the prior case, the debtor's subsequent discharge on September 24, 2005 now bars the IRS from claiming the same in the present case.  The debtor's basis for this argument is that

---

[1] The remaining $948.60 relates to 2010 income taxes.

given the size of debtor's payroll at the time, tax regulations mandated that the debtor withhold and deposit the employment taxes at issue on a monthly basis. The debtor argues that because of this procedure, the taxes became payable and the debtor's liability accrued on a month-to-month basis, rather than a quarterly basis. Notably, this monthly deposit schedule—that the debtor argues would have been applicable to the debtor's business in 2001—requires that employment taxes on payments made during any given month be deposited by the 15th of the following month. Therefore, the debtor admits that even if the court accepted its argument, the October 2001 taxes would have been the only deposit that was due prior to December 7, 2001.[2] In response, the IRS takes the position that the taxes—as well as the related penalties—arose postpetition, "as the fourth quarter of 2001 ended on December 31, 2001, several weeks after the [prior case] was filed, and the payroll tax return for that period was not due to be filed until January 31, 2002." Furthermore, the IRS argues that even if the court were to find that it is possible, in theory, to bifurcate the quarter into prepetition and postpetition taxes, it would be both inappropriate and impossible to do so in the present case because the debtor has submitted no proof that *any portion* of the liability arose prior to December 7, 2001. Because the debtor has submitted no proof to support its objection, the IRS argues that its properly filed proof of claim is presumed valid. See Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.")

---

[2] The taxes for November 2001 would have been due on December 15, 2001, and the December 2001 taxes on January 15, 2002. Therefore, the debtor would only have been required to deposit the October 2001 taxes before the prior case was commenced. Obviously, there is no argument that any of the liability relating to the unpaid taxes from the first quarter of 2002 was discharged in the prior case.

3

In addition, the debtor makes two arguments with regard to the NOFTL.  First, the debtor requests that the court require the IRS to provide competent evidence establishing that it complied with the Internal Revenue Code's prerequisites for filing a notice of federal tax lien, before allowing the NOFTL to serve as the basis of perfection of its secured claim.  Specifically, the debtor requests that the court order the IRS to provide proof that: (1) a tax assessment was made; (2) a notice of assessment was sent to the taxpayer within sixty days of the tax assessment; and (3) the debtor failed to pay the tax assessed within ten days after notice and demand.  See I.R.C. §§ 6203, 6303, 6331.  Lastly, the debtor argues that the IRS cannot use the civil penalties and interest relating to unpaid employment taxes in the fourth quarter of 2001 and the first quarter of 2002 as the basis for both its unsecured priority claim and the NOFTL.  Essentially, the debtor argues that this allows the IRS to "double-dip," taking advantage of unsecured priority status while simultaneously encumbering the debtor's assets for the same debt.  To remedy this inconsistency, the debtor contends that the court should order the IRS to reduce the NOFTL by $20,770.78—the amount arising from the unpaid employment taxes in the fourth quarter of 2001 and the first quarter of 2002.  Once again, the IRS takes the position that the debtor failed to offer any evidence supporting that the NOFTL or proof of claim are inaccurate.  Because the NOFTL states that the IRS complied with all requirements, the burden is on the debtor to come forward with evidence, which he has failed to do.

## DISCUSSION

Section 1305(a)(1) of the Bankruptcy Code provides that a "proof of claim may be filed by any entity that holds a claim against the debtor for taxes that *become payable* to a governmental unit while the case is pending[.]"  In this case, the issue is whether the October

4

2001 employment taxes became payable, within the meaning § 1305(a)(1), before or after the debtor's petition in the prior case. If they became payable prepetition, the taxes were subject to the debtor's discharge. On the other hand, if they became payable postpetition, the IRS was not required to file a proof of claim in the debtor's prior case,[3] and therefore, the claims based on the October 2011 would not be barred in the present case.

In the context of payroll or employment taxes, case law supports that the taxes "become payable" when they are "withheld and not remitted" to the IRS. Unites States v. Lee, 184 B.R. 257, 262 (W.D. Va. 1995); see In re Friesenhahn, 169 B.R. 615, 626 (W.D. Tex. 1994) ("The withholding taxes that allegedly were not remitted to the government in the instant case relate exclusively to periods for which tax returns were due prepetition. The *tax* which the IRS seeks to recover therefore *became payable* prepetition, when Southwest's quarterly payroll tax returns were due to be filed."). In the present case, the court finds that the debtor makes a colorable legal argument to support the proposition that the October 2001 taxes became payable prepetition, because in theory, the taxes should have been withheld and submitted on November 15, 2011. However, the court does not need to address the validity of the debtor's legal position at this time, because as the IRS pointed out, the debtor has failed to provide *any evidence that any portion* of the liability actually arose prior to December 7, 2001. When objecting to a properly filed claim, such a burden is clearly on the debtor.

> The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim

---

[3] The language of § 1305(a)(1) is permissive. The IRS is allowed, but not required, to file a proof of claim based on a debtor's postpetition taxes. See 11 U.S.C. § 1305(a) (providing that a "proof of claim *may be* filed by any entity that holds a claim against the debtor for taxes that become payable to a governmental unit while the case is pending") (emphasis added).

> constitutes prima facie evidence of the amount and validity of the claim. The burden then shifts to the debtor to object to the claim. The debtor must introduce evidence to rebut the claim's presumptive validity. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

Stancil v. Harford Sands Inc. (In re Harford Sands Inc.), 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted); see also Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." ). The debtor's hypothetical scenario of what he probably did, or should have done, does not rebut the presumption of validity of IRS's claim.

Additionally, the court finds no basis for the debtor's request that the court order the IRS to prove affirmatively that all administrative prerequisites were followed before allowing the NOFTL to serve as the basis for perfection of its secured claim. If the debtor has competent evidence that these prerequisites have not been met, the proper procedure would be to file an adversary proceeding to attack the lien. See Fed. R. Bankr. P. 7001 ("The following are adversary proceedings: . . . a proceeding to determine the validity, priority, or extent of a lien or other interest in property . . . ."). Otherwise, the NOFTL stands as procedurally regular.

The court also finds that the debtor's contention that the NOFTL must be reduced is premature. The amount claimed on the NOFTL is over $140,000.00, while the IRS only asserts a right in this case to a secured amount of $5,166.46. Clearly, there is a discrepancy, but at this point in the case, the debtor has no right to demand a reduction in the NOFTL. If the debtor successfully completes his chapter 13 plan, the lien will be removed in its entirety. However, if the debtor's case is converted or dismissed prior to completion of the plan, the lien will be reinstated pursuant to § 349(b)(1)(C).

## **CONCLUSION**

Based on the foregoing, the debtor's objection to the proof of claim filed by the IRS is **OVERRULED.**

**"END OF DOCUMENT"**